**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DARREN ROBINSON**                                        **CIVIL ACTION**

**VERSUS**                                                           **NO.   15-1551**

**N. BURL CAIN, WARDEN**                                 **SECTION: "E"(5)**

## REPORT AND RECOMMENDATION

        This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.   Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).   For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

*Procedural History*

        Petitioner, Darren Robinson, is a state inmate incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.   He was charged with possession of cocaine in excess of 200 grams but less than 400 grams and possession of a firearm by a convicted felon.[1]

---

[1] State Rec., Vol. 1 of 7, 24th Judicial District Parish of Jefferson, Bill of Information.

Following a two-day trial, on March 11, 2010, a jury found him guilty as charged.[2]    On March 16, 2010, he was sentenced to 30 years imprisonment at hard labor for cocaine possession and 15 years imprisonment at hard labor without benefit of probation, parole or suspension of sentence for the firearm charge, with additional monetary fines imposed on each, to run concurrently.[3]    The State subsequently filed two multiple-offender bills of information.[4]    On March 25, 2010, following a multiple-offender adjudication, his original sentences were vacated and he was sentenced for cocaine possession as a quadruple offender to 60 years imprisonment at hard labor without benefit of probation or suspension of sentence, the first 10 years also to be served without benefit of parole, and for firearm possession as a second-felony offender to 30 years imprisonment at hard labor without probation or suspension of sentence, the first 15 years also to be served without benefit of parole, to run concurrently.[5]

---

[2]   State Rec., Vol. 1 of 7, Minute Entry, 3/11/10; *see also* Jury Verdict, pp. 69, 71.

[3]   State Rec., Vol. 1 of 7, Minute Entry, 3/16/10.    The minute entry references counts two and three, which were the specific counts enumerated in the bill of information against Darren Robinson.    Sharon Robinson, his wife, was also charged in count two.    Count one of the bill of information charged Sharon Robinson's sister, Maria Lewis, with possession of cocaine between 28 and 200 grams.    On March 22, 2010, Sharon Robinson ultimately pleaded guilty to a reduced possession charge and obstruction of justice.    Lewis pleaded guilty to obstruction of justice.    State Rec., Vol. 4 of 7 (Exhibit 14 to State's PCR response memorandum); *see also* State Rec., Vol. 2 of 7, Sentencing Transcript (March 16, 2010).

[4]   *Id*. at pp. 76, 83, Multiple Offender Bills of Information.

[5]   State Rec., Vol. 1 of 7, Minute Entry, 3/25/10; *see also* State Rec., Vol. 2 of 7, Habitual Offender Sentencing Transcript (March 25, 2010).

On direct appeal, Robinson raised the following assignments of errors: (1) the trial court erred in denying the motion to suppress his statement; (2) the trial court erred in denying the motion to suppress evidence; (3) the trial court erred in allowing the State to amend the bill of information immediately before trial; (4) the trial court erred in denying the motion to continue trial; (5) the verdict is contrary to the law and evidence; (6) the trial court erred in denying a motion for mistrial and motion for a new trial; (7) the trial court erred in allowing improper joinder of offenses; (8) the sentences were excessive and (9) the trial court erred in denying the motion to reconsider sentence.    On December 29, 2011, the Louisiana Fifth Circuit Court of Appeal affirmed the convictions and sentences.[6]    His motion for a rehearing was subsequently denied.    On June 15, 2012, the Louisiana Supreme Court denied his application for a writ of certiorari.[7]

On June 13, 2013, Robinson's counsel of record filed an application for post-conviction relief on his behalf with the state district court.[8]    In that application, he asserted: (1) the State withheld material, exculpatory and impeaching evidence; (2) ineffective assistance of appellate counsel and (3) ineffective assistance of trial counsel.    That motion

---

[6]  *State v. Robinson*, 2011-KA-12 (La. App. 5th Cir. 12/29/11), 87 So.3d 881, *reh'g denied* (April 3, 2012). State Rec., Vol. 6 of 7.

[7]  *State v. Robinson*, 2012-K-0279 (La. 6/15/12), 90 So.3d 1059.

[8]  State Rec., Vol. 6 of 7, Uniform Application for Post-Conviction Relief attached as Exhibit 1 to Louisiana Fifth Circuit Writ Application No. 14-KH-180.    The state district court's order also reflects the filing date as June 13, 2013.

3

was denied on January 7, 2014.[9]    On February 6, 2014, counsel filed a notice of intent to seek supervisory writs.    The state district court ordered a return date (within 30 days of the ruling) of February 7, 2014.    On February 7, 2014, counsel filed a motion for extension of the return date and was granted until March 7, 2014 to file a supervisory writ application. On March 12, 2014, counsel filed a related supervisory writ application with the court of appeal.[10]    That application raised only ineffective assistance of trial counsel.    On May 1, 2014, the Louisiana Fifth Circuit Court of Appeal denied relief, finding that the writ application was not timely filed and also denying the claim as meritless.[11]    On May 27, 2014, he filed a *pro se* writ application with the Louisiana Supreme Court challenging the intermediate court's ruling.[12]    That writ was denied without stated reasons on April 2, 2015.[13]

While those proceedings were pending, on June 20, 2014, Robinson also filed a *pro se*

---

[9]  *Id.*, District Court Order denying PCR signed January 7, 2014.

[10]  Although the counseled writ application contains a certificate of service signed and dated March 7, 2014, the application was postmarked March 9, 2014 and received and filed by the court of appeal on March 12, 2014.

[11]  State Rec., Vol. 3 of 7, *State v. Robinson*, 14-KH-180 (La. App. 5th Cir. May 1, 2014) (unpublished writ ruling).

[12]  State Rec., Vol. 7 of 7, Louisiana Supreme Court Writ Application No. 2014-KH-1113.    The application bears a stamp showing that it was delivered to prison officials for mailing on May 27, 2014.

[13]  *State ex rel. Robinson v. State*, 2014-KH-1113 (La. 4/2/15), 162 So.3d 394. State Rec., Vol. 7 of 7.

motion to vacate an illegal habitual-offender sentence with the state district court.[14]   That motion was denied on July 28, 2014.[15]   In response to a traverse filed by Robinson on or about August 4, 2014, the district court issued another ruling stating that the motion was already denied by order dated July 28, 2014.   On August 7, 2014, Robinson filed a notice of intent to seek supervisory writs from the ruling denying his motion to vacate.   He also sought an extension of time and was granted until September 16, 2014 to file his writ application with the court of appeal.   On September 10, 2014, Robinson filed a related writ application with the Louisiana Fifth Circuit.[16]   On December 4, 2014, the court of appeal denied relief.[17]   He did not seek supervisory review of the judgment with the Louisiana Supreme Court.

On May 4, 2015, Robinson filed his federal application for *habeas corpus* relief.[18]  In his petition, Robinson claims: (1) the trial court erred in denying the motion to suppress his

---

[14]   State Rec., Vol. 3 of 7, Motion to Vacate an Illegal Habitual Offender Sentence. Although the motion is not dated, the envelope bears a postmark stamp dated June 20, 2014. It was stamped as filed for the record on June 23, 2014.

[15]   *Id*., District Court Order denying Motion to Vacate signed July 28, 2014.

[16]   State Rec., Vol. 6 of 7, Fifth Circuit Court of Appeal Supervisory Writ Application No. 14-KH-711.

[17]   *Id*., *State v. Robinson*, 14-KH-711 (La. App. 5th Cir. Dec. 4, 2014) (unpublished writ ruling).

[18]   Rec. Doc. 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus. The Court has adopted the State's argument with regard to this being the earliest date on which he could have submitted the petition.

statement; (2) the trial court erred in denying the motion to suppress the evidence; (3) the trial court erred in allowing the State to amend the bill of information immediately before trial; (4) the trial court erred in denying the motion to continue trial; (5) the verdict is contrary to the law and evidence; (6) the trial court erred in denying a motion for mistrial and motion for a new trial; (7) the trial court erred in allowing improper joinder of offenses; (8) the sentences were excessive; (9) the trial court erred in denying the motion to reconsider sentence and (10) trial counsel was ineffective for failing to investigate, interview and call witnesses.    The State concedes that Robinson has exhausted state-court remedies as to all of the claims raised, but argues that his federal application is untimely.    In response to this Court's order, the State provided a supplemental memorandum in which it contends some of the claims have been procedurally defaulted and the remainder fail on the merits.[19] Robinson filed a traverse to the State's supplemental response.[20]

For the reasons set forth below, the Court rejects the State's timeliness argument and proceeds to a review of the claims.

*Statute of Limitations*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, governs the filing date for this action because Robinson filed his *habeas* petition after the AEDPA's effective date.    *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138

---

[19]  Rec. Doc. 21.

[20]  Rec. Doc. 24.

6

L.Ed.2d 481 (1997).    The AEDPA generally requires that a petitioner bring his Section 2254

claims within one (1) year of the date on which his underlying criminal judgment becomes

"final." 28 U.S.C. 2244(d)(1)(A).[21]    With regard to finality, the United States Fifth Circuit

Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a
> state conviction begins to run on "the date on which the [state] judgment
> became final by the conclusion of direct review or the expiration of the time
> for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner
> has pursued relief on direct appeal through his state's highest court, his
> conviction becomes final ninety days after the highest court's judgment is
> entered, upon the expiration of time for filing an application for writ of
> certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d
> 690, 693 (5th Cir.2003). However, "[i]f the defendant stops the appeal process
> before that point," ... "the conviction becomes final when the time for seeking
> further direct review in the state court expires." *Id*. at 694; *see also Foreman v.
> Dretke*, 383 F.3d 336, 338 (5th Cir.2004) (Section 2244(d)(1)(A) gives
> alternative routes for finalizing a conviction: either direct review is completed
> or the time to pursue direct review expires).
>
> Although federal, not state, law determines when a judgment is final for
> federal habeas purposes, a necessary part of the finality inquiry is determining
> whether the petitioner is still able to seek further direct review. *See Foreman*,
> 383 F.3d at 338–39. As a result, this court looks to state law in determining
> how long a prisoner has to file a direct appeal. *See Causey v. Cain*, 450 F.3d 601,
> 606 (5th Cir.2006); *Roberts*, 319 F.3d at 693.

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir.2008).

The limitations period is subject to statutory tolling for the time during which "a

properly filed application for State post-conviction or other collateral review with respect to

---

[21]   Section 2244(d)(1) includes alternate provisions for other events that can trigger
the commencement of the statute of limitations, which do not apply in this case.

the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).    In order for a state

application to be considered "properly filed" for purposes of § 2244(d)(2), the delivery and

acceptance of the application must be in compliance with the applicable state laws and rules

governing filings.    *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14, 125 S.Ct. 1807, 161 L.Ed.2d

669 (2005), *citing Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 364 (2000).    These rules

usually prescribe, for example, the form of the document, the time limits upon its delivery,

the court and office in which it must be lodged, and the requisite filing fee."    *Artuz v.

Bennett*, 531 U.S. at 8 (footnote omitted).    A state application is "pending" both while it is

before a state court for review and also during the interval after a state court's disposition,

while the petitioner is authorized to proceed to review at the next level of state

consideration.    *See Grillette v. Warden, Winn Correctional Center*, 372 F.3d 765, 769-71 (5th

Cir. 2004) (a state application ceases to be pending when the time for supervisory review

expires); *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001); *Carey v. Saffold*, 536 U.S. 214,

219-20, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002) (a matter is "pending" as long as the ordinary

collateral review process is in continuance).

Robinson's state criminal judgment became final, for federal limitations purposes, on

September 13, 2012 (*i.e.*, 90 days after the Louisiana Supreme Court's decision denying his

writ of certiorari), when his time limit expired for seeking review in the United States

Supreme Court.    Under a plain reading of the statute, the AEDPA one-year limitations

period commenced on that date and expired on September 13, 2013, unless that deadline

was extended through tolling.

After allowing 272 days to elapse, Robinson filed a counseled application for post-conviction relief with the state district court on June 13, 2013.    That application was denied on January 7, 2014.    As the initial return date reflects, Robinson had 30 days, until February 7, 2014, in which to file a supervisory writ application with the court of appeal.    However, enrolled counsel timely sought and obtained an extension of time in which to file and was given another 30 days, or until March 7, 2014.

Robinson's counsel did not file the supervisory writ application on his behalf by this deadline.    While the verification in that application bears the date of March 7, 2014, the application was stamped as filed on March 12, 2014.    Furthermore, tracking information reflected a postmark date of March 9, 2014.    The Louisiana Fifth Circuit Court of Appeal found that the application was not filed timely pursuant to Louisiana Court of Appeal Rule 4-3, and alternatively denied relief on the merits.    The court of appeal stated:

> First, we find that relator's application to this Court is untimely. The trial court denied relator's application for post-conviction relief on January 7, 2014.    On February 6, 2014, counsel filed a notice of intent to seek supervisory writ. The following day, on February 7, 2014, counsel filed a motion for extension of time, which the trial court granted and extended the return date to March 7, 2014.
>
> Uniform Rules, Courts of Appeal, Rule 4-3 provides:
>
> Upon proper showing, the trial court or the appellate court may extend the time for filing the application upon the filing of a motion for extension of return date by the applicant, filed within the original or an extended return date period.    **An application not filed in the appellate court within the time so fixed or extended shall not be considered, in the absence of a showing**

**that the delay in filing was not due to applicant's fault.**
(emphasis added).

This counseled writ application was filed on March 12, 2014, after the March 7, 2014 return date set. [22]    In his writ application, relator provides no showing that the delay in filing was not his fault.[23]

The United States Supreme Court has held that "time limits, no matter their form, are 'filing' conditions"; when the state courts have rejected a state application as untimely, it cannot be considered "properly filed" so as to entitle the petition to statutory tolling.    *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).    Simply put:    "When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)."    *Id.* at 414 (internal quotation marks and brackets omitted).    In *Carey v. Saffold*, the Supreme Court explained that an unambiguous ruling by the state court that a state *habeas* application is untimely, regardless of whether the state court nonetheless reached the merits, ends our inquiry, because a state application ceases to be pending when the time for appellate review expires.    *Carey v. Saffold*, 536 U.S. at 226.    In fact, the Supreme Court in *Carey* acknowledged many reasons why a court might "address the merits of a claim that it believes was presented in an untimely way."    *Id*.

The State maintains that Robinson is not entitled to statutory tolling credit for the

---

[22] Further, the USPS tracking information available indicates a "post-mark" date of March 9, 2014, also after the March 7, 2014 return date set. (footnote in original) (emphasis in original).

[23] State Rec., Vol. 3 of 7, *Robinson v. Cain*, 14-KH-180 (La. App. 5th Cir. May 1, 2014). (unpublished)

time attributable to his untimely writ application in the court of appeal because a petition that is untimely under state law does not trigger statutory tolling under 28 U.S.C. § 2244(d)(2).   Tolling therefore ceased on March 7, 2014.   The State argues that at this point, Robinson had only 93 days of the federal limitations period remaining and that the limitations period continued to run unabated until it expired on June 9, 2014.[24]

However, after the denial of his writ on May 1, 2014, Robinson was still authorized to proceed to the next level of review (*i.e.*, the ordinary collateral process was in continuance), and he clearly did so.   Robinson sought timely review by filing an application for supervisory review in the Louisiana Supreme Court within 30 days of that ruling.   *See* Louisiana Supreme Court Rule X, § 5(a).   The Louisiana Supreme Court did not deny the writ as untimely, but simply denied relief without stated reasons.   The State does not address the impact, if any, that the continuance of the collateral process had on tolling at this point.   Presumably, the State assumes, without citing any authority for the proposition, that no further interruption or tolling was available to Robinson once his appellate writ was rejected as untimely.   Absent briefing by the parties or definitive authority in support of the State's position, however, the Court declines to assume that Robinson was not entitled to further tolling associated with the Louisiana Supreme Court writ application.   *See e.g.*, *Murphy v. Cooper*, 12-1339, 2012 WL 5463864, at *3-4 (E.D. La. Oct. 1, 2012) (citing *Melancon*

---

[24]   The State argued it expired on June 8, 2014; however, because that was a Sunday, he had until June 9, 2014 to file his federal application.

*v. Kaylo*, 259 F.3d 401, 407 (5th Cir.2001)).    Giving Robinson every benefit of the doubt and affording him the 30 days during which he was still authorized to and during which he did, in fact, timely proceed to the next level of review, the Court will consider as tolled, the interval between the appellate court's ruling of May 1, 2014 and the Louisiana Supreme Court's ruling of April 2, 2015.[25]    Under this scenario, assuming that Robinson is not entitled to any tolling credit for the time during which his writ application ceased to be pending and properly filed in the court of appeal (55 days), and this time is added to the 272 days that had already elapsed, plus an additional 31 days that elapsed between April 2, 2015 and May 4, 2015, for a total of 358 days, his federal application is timely.

*Procedural Default*

The State notes that claims six (denial of motion for mistrial and a new trial) and seven (impermissible joinder of offenses) were found procedurally barred from review by the state appellate court on direct appeal.    Similarly, claims eight and nine (excessive sentence and denial of motion to reconsider sentence) were procedurally barred from review on direct appeal.    **In light of the additional consideration of claims eight and nine, Robinson is hereby instructed that this Report and Recommendation shall serve as notice to him that the Court is *sua sponte* raising the issue of procedural default,**

_____

[25] Robinson's motion to vacate filed in the state district court on June 20, 2014, and the collateral proceedings associated with that motion, which concluded 30 days after the intermediate court's ruling of December 4, 2014 when he did not pursue further review, merely overlapped the previously mentioned pending supervisory review proceedings and do not alter these timeliness calculations.

**and that he must submit any evidence or argument concerning the default as part of any objections he may file to this report.**   The Court will address the issue of procedural default before proceeding to the merits of the remaining claims.

In dismissing claim six as procedurally barred, the court of appeal deemed the claim abandoned under Rule 2-12.4 of the Uniform Rules, Courts of Appeal, for failure to brief the assigned error.[26]   In dismissing claim seven, the court of appeal held that the claim for misjoinder of offenses was not preserved by timely filed motion to quash or contemporaneous objection under Louisiana Code of Criminal Procedure articles 495 and 841.[27]   Finally, in dismissing claims eight and nine, the court of appeal found that Robinson had not properly filed a motion to reconsider the enhanced sentence which he sought to challenge on appeal and was therefore precluded from raising the claim pursuant to Louisiana Code of Criminal Procedure article 881.1.[28]   The Louisiana Supreme Court

---

[26] *State v. Robinson*, 87 So.3d at 908-09.   Uniform Rule 2-12.4 provides:   "All assignments of error and issues for review must be briefed.   The court may consider as abandoned any assignment of error or issue for review which has not been briefed."

[27] *State v. Robinson*, 87 So.3d at 909-10.   Louisiana Code of Criminal Procedure article 495 states:   "The objections of misjoinder of offenses may be urged only by a motion to quash the indictment."   Under Louisiana Code of Criminal Procedure article 841 (A), "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."

[28] *State v. Robinson*, 87 So.3d at 910-11.   The appellate court noted the motion to reconsider was filed, heard and denied before the enhanced sentence was imposed.   The original sentence was thereafter vacated and no objection or motion was ever raised with respect to the enhanced sentence.   Louisiana Code of Criminal Procedure article 881.1 (E) provides: "Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of

denied relief without comment.

A.    *Independent and Adequate State Grounds*

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.    *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).    This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or *habeas* review. *Amos*, 61 F.3d at 338.

A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.    *Amos*, 61 F.3d at 338.    To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, 562 U.S. 307, 131 S.Ct. 1120, 1127 (2011); *Glover*, 128 F.3d at 902.    A state procedural rule, however, "can be 'firmly established' and 'regularly followed,' even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." (citations omitted).    *Beard v. Kindler*, 558 U.S. 53, 60 (2009).

---

excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

The procedural rules noted above satisfy these requirements. The bases for the state court's dismissal of these claim was plainly independent of federal law and relied strictly on state procedural requirements. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

　　1.　*Uniform Rule 2-12.4, Louisiana Courts of Appeal*

Louisiana federal courts hold that Uniform Rule 2-12.4 is firmly established and regularly followed such that abandonment for failure to brief an assigned error provides an adequate state ground that bars review by the federal courts in a *habeas corpus* proceeding. *See e.g., Boyer v. Cain*, No. 14-0914, 2016 WL 1212410, at * 4-5 (W.D. La. Jan. 14, 2016); *Williams v. Cain*, No. 12-493, 2014 WL 2465542, at *3-4 (M.D. La. May 30, 2014).

　　2.　*La. Code Crim. Proc. articles 495 and 841*

Similarly, Louisiana federal courts have held that the failure to preserve a claim under Louisiana Code of Criminal Procedure article 495 provides an adequate state ground which bars review by the federal courts in a *habeas corpus* proceeding. *See Pierce v. Warden, La. State Penitentiary*, No. 06–1185, 2009 WL 55937, at *9 (W.D. La. Jan. 6, 2009) (finding that Louisiana courts regularly invoke article 495 to hold that claims based on improper joinder are waived unless raised by pretrial motion to quash) (citations omitted). It is equally well-settled that the "contemporaneous objection" rule is an additional "independent and adequate" state procedural ground which bars federal *habeas corpus* review. *Wainwright v. Sykes*, 433 U.S. 72, 87–88 (1977).

3. *La. Code Crim. Proc. article 881.1*

The federal courts have consistently found this state procedural bar to be evenhandedly applied and adequate to bar federal review. *Young v. Travis*, No. 07-3542, 2011 WL 494811, at *7 (E.D. La. Jan. 13, 2011), *adopted* 2011 WL 494802, at *1 (E.D. La. Feb. 4, 2011); *Semien v. Warden*, No. 08–0162, 2009 WL 1393316, at *6–7 (W.D. La. May 12, 2009) (Order Adopting Report and Recommendation); *Weaver v. Cain*, No. 04–1642, 2006 WL 2792427, at *12 (E.D. La. Sept. 25, 2006) (Order Adopting Report and Recommendation); *Fontan v. Ieyoub*, No. 94–1416, 1994 WL 374296, at *5–6 (E.D. La. July 5, 1994).

B.   *Cause and Prejudice*

Federal courts may look beyond the procedural default only if a petitioner shows cause for the default and actual prejudice, or that the failure to reach the merits of the claim will result in a complete miscarriage of justice. *Coleman; Wainwright, supra*; *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002), *cert. denied*, 537 U.S. 829, 123 S.Ct. 127, 154 L.Ed.2d 43 (2002). To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486.

Robinson has not alleged any cause for the default which would excuse the procedural

bars imposed by the Louisiana courts.    The Court observes that to the extent he might attempt to argue ineffective assistance of trial or appellate counsel as cause to excuse his procedural default, those independent claims themselves are unexhausted and cannot serve as cause for a procedural default.    While ineffective assistance of counsel may in some instances constitute cause for a procedural default, that ineffective-assistance-of-counsel claim itself generally must have been presented to, and exhausted in, the Louisiana state courts as a separate and distinct claim for relief.    *See Edwards v. Carpenter*, 529 U.S. 446, 451-452, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *Murray*, 477 U.S. at 489; *Bishop v. Epps*, 265 F. App'x 285, 290–291 (5th Cir. 2008).    Here, the record reflects that although the claims were raised and denied on post-conviction relief at the trial-court level, they were not pursued in either the intermediate appellate court or the Louisiana Supreme Court.[29] Because Robinson has not demonstrated any cause for his procedural default, it is unnecessary for the Court to reach the prejudice issue.    *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

## C.   *Miscarriage of Justice*

Finally, Robinson has not established that a "fundamental miscarriage of justice" would occur if this Court refuses to consider his claims.    A "fundamental miscarriage of justice" exists where "the constitutional violation has probably resulted in the conviction of

---

[29]  *See* State Rec., Vol. 5 of 7, PCR application, p. 28; State Rec., Vol. 6 of 7, Louisiana Fifth Circuit Supervisory Writ Application No. 14-KH-180 (La. App. 5th Cir); Vol 7 of 7, Louisiana Supreme Court Supervisory Writ Application No. 14-KH-1113.

one who is actually innocent." *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904; *Ward v. Cain*, 53 F.3d 106,108 (5th Cir.1995); *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.1996) (quoting *McClesky v. Zant*, 499 U.S. 467, 495,114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993)).   The "miscarriage of justice" exception requires the petitioner to make a "colorable showing of factual innocence." *Callins*, 89 F.3d at 213 (quoting *McClesky v. Zant*, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993)).   Robinson has not presented any new reliable evidence to support an assertion of actual innocence that would allow this Court to consider this claim in spite of the procedural default.

For these reasons, Robinson has failed to overcome the procedural bar and his claims of trial court error in denying a mistrial and new trial, allowing improper joinder of offenses, and excessiveness of the habitual offender sentence/denial of the motion to reconsider sentence should be dismissed with prejudice as procedurally barred.

## Standards of Review on the Merits

Title 28 U.S.C. § 2254(d) (1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.   A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas*

*corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."    *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.    *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case."    *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

19

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA."    *Harrington v. Richter*, 562 U.S. 86 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

*Facts*

The following facts were established at trial and summarized by the Louisiana Fifth Circuit Court of Appeal:

> Lieutenant Danny Jewell, of the Jefferson Parish Sheriff's Office Narcotics Division, testified that on August 4, 2009, he and his investigative team attempted to set up a surveillance of Darren Robinson, the defendant, at his assumed address, 3232 Kentucky Avenue in Kenner, Louisiana. When the surveillance proved futile, they attempted to relocate the surveillance to a second known address, 1110 Demarco Street in Marrero. However, when they were approximately one block from 1110 Demarco Street, Lieutenant Jewell observed the defendant pulling into a gas station at the intersection of

Westwood and the Westbank Expressway.

Having had prior dealings with the defendant in the past, Lieutenant Jewell approached the defendant at the gas station, advised him of his *Miranda*[30] rights, and placed him under arrest for five outstanding attachments. The defendant then gave the officers verbal consent to search his vehicle. A K–9 drug dog was used to search defendant's vehicle, and although the K–9 positively alerted to two locations in the vehicle, no narcotics were found. Lieutenant Jewell testified that while no narcotics were found inside the vehicle or on the defendant's person, the officers seized $2,205.00 in cash and a cell phone from the defendant's person, a rental agreement (in the name of Sharon Robinson), a second cell phone, a set of keys, and a tally sheet from inside the vehicle defendant was driving. After conducting the search of the vehicle, Lieutenant Jewell testified that he asked the defendant where he lived to which he responded that he lived at 1110 Demarco Street with his mother and wife, Sharon Robinson. Based on this information, Lieutenant Jewell drove to 1110 Demarco Street where he spoke with Diane Robinson, the defendant's mother, but was unable to make contact with Sharon Robinson, the defendant's wife. Lieutenant Jewell testified that Diane Robinson told him that neither the defendant nor Sharon Robinson lived with her, but rather lived in "Metairie somewhere."

After speaking with the defendant's mother, Lieutenant Jewell testified that he and Sergeant Klein relocated to 3232 Kentucky Avenue, in Kenner, while the remainder of his investigative team stayed behind at 1110 Demarco Street. Upon arrival at 3232 Kentucky Avenue, Maria Lewis, Sharon Robinson's sister, opened the door. Lieutenant Jewell asked to speak with Sharon Robinson, who upon learning of the defendant's arrest, agreed to a cursory weapon search of the home while a search warrant was being prepared. While conducting the weapon search, two pistols were retrieved from the top of an armoire located in the master bedroom. Jewell obtained a search warrant for the home, and upon executing the warrant, discovered that one of the keys retrieved from the vehicle driven by defendant opened the deadbolt to the front door of the home. According to Lieutenant Jewell, photographs of the home were taken and then a search of the house was conducted.

Pursuant to the search, the following items were seized: the two firearms previously identified during the weapon search, $10,000 in cash, paperwork

---

[30] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

(addressed to either the defendant or Sharon Robinson and with the Kentucky Avenue address on it), a large quantity of men's clothing from the master bedroom including shoes, hats, and jeans, a tally sheet similar to the one found in the vehicle driven by defendant, a picture of the defendant in the living room, 49 grams of crack cocaine in Maria Lewis' bedroom, 255 grams of cocaine split between nine clear plastic bags found in the washing machine in the garage, two and a half grams of crack cocaine on a kitchen shelf, and drug paraphernalia, including plastic bags, razor blades, a scale, and a vacuum sealer with vacuum sealer bags, found in the kitchen.[31]

Next, Detective Eric Dufrene, of the Jefferson Parish Sheriff's Office Narcotics Division, testified that he was a member of Lieutenant Jewell's investigative team on August 4, 2009, and aided in the investigation of the defendant. Detective Dufrene testified that, after the defendant was arrested and advised of his *Miranda* rights by Lieutenant Jewell, he was tasked with maintaining the care, custody, and control of the defendant. While in his custody, the defendant advised Detective Dufrene that he did not live at 3232 Kentucky Avenue, but that he lived with his mother at 1110 Demarco Street. After transporting the defendant to the Jefferson Parish Correctional Center, Detective Dufrene went to 3232 Kentucky Avenue where he acted as evidence custodian with respect to the items seized.

Kelly Carrigan, latent fingerprint technician with the Jefferson Parish Sheriff's Office, was qualified by the trial court as an expert in latent fingerprint analysis. Carrigan testified that he processed one Glock Model 23 handgun, one .40 caliber semi-automatic pistol, .740 caliber S & W Winchester cartridges, one Springfield Armory Model XD45 .40 caliber semi-automatic pistol, and 1945 auto-caliber cartridges. However, no usable latent prints were developed. Carrigan was also asked to process the plastic bags containing the narcotics as well as the digital scale containing a white powder residue. Carrigan testified that the plastic bags containing the narcotics tested negative for fingerprints, and the digital scale contained only a partial fingerprint which was sent to the Latent Fingerprint Identification Section for identification.

Gene Dixon, with the Jefferson Parish Sheriff's Office Narcotics Division, testified that on August 4, 2009, he assisted Lieutenant Jewell in the

---

[31] The narcotics field test performed on the substances seized tested positive for cocaine. Additionally, the narcotics evidence, the scale, and the firearms were tested for fingerprints; however, no usable fingerprints were obtained.

investigation of the defendant. Dixon was tasked with presenting certain forfeiture paperwork to the defendant at the time of his arrest. When presented with a disclaimer form regarding the evidence seized, the defendant indicated that the $10,000 seized from the home on Kentucky Avenue did not belong to him but rather indicated, "it was for his brother."

On cross-examination, Dixon stated that the defendant informed him that he did not live at 3232 Kentucky Avenue, and that he did not know about the narcotics found at that residence. However, Dixon further testified that the defendant was aware of the $10,000 located in the home, and the defendant stated that the money belonged to Corey Robinson, his brother, who was planning on using the money to buy a car.

Charles Krone, a forensic scientist with the Jefferson Parish Sheriff's Office, and recognized by the court as an expert in the field of controlled dangerous substance analysis, tested the narcotics recovered in this case. First, Krone tested the off-white powder found within one of the nine smaller plastic bags found in the washing machine within a larger plastic shopping bag. The substance tested positive for cocaine and Krone determined the total net weight of the substance to be 246.38 grams. Next, Krone tested a sandwich bag containing seven smaller bags with "large pieces of material" inside. The material tested positive for cocaine with a total net weight of 45.51 grams. Finally, Krone tested the substance found in another small bag which tested positive for cocaine and had a gross weight of 2.2 grams.

Lastly, the State called Joel O'Lear, who testified that he is a firearm and tool mark examiner as well as a latent fingerprint examiner with the Jefferson Parish Sheriff's Office Forensic Identification Section. After O'Lear was qualified as an expert in latent fingerprint examination, he testified that he analyzed a fingerprint removed from the digital scale seized from the home, but due to insufficient clarity was unable to draw any conclusions. Next, O'Lear testified that on the morning of trial, he obtained fingerprints from the defendant and compared them to the fingerprints on the back of the bill of information on one of defendant's previous convictions for possession with intent to distribute cocaine, Case No. 97–007, finding that the defendant's fingerprints matched those from his prior conviction. O'Lear then compared the fingerprints taken the morning of trial to a second certified conviction where defendant was charged with simple possession of cocaine, Case No. 426–892, again finding that defendant's fingerprints matched those from defendant's prior conviction.

After the State rested, the defense introduced into evidence: two of the defendant's arrest registers dated August 4, 2009, bearing the address 1110 Demarco Drive, Marrero, Louisiana; one hand-written arrest register authored by Jewell bearing the address 3232 Kentucky Avenue; and one typed arrest register dated August 4, 2009, bearing the address 3232 Kentucky Avenue, Kenner, Louisiana.

The defense then called Diana Robinson ("D. Robinson"), the defendant's mother, to the stand. D. Robinson testified that the defendant has been married to Sharon Robinson ("S. Robinson") for 24 years, and he has a sister-in-law by the name of Maria Lewis. D. Robinson further testified that on August 4, 2009, police officers arrived at her house on 1110 Demarco Drive in Marrero inquiring into whether Sharon Robinson lived there. After advising the officers that the defendant and Sharon Robinson did not live with her, she told them that the defendant "lived somewhere in Kenner." However, at trial, D. Robinson testified that at the time of defendant's arrest, the defendant was residing with Terry Hunter in Gretna since the defendant and his wife had separated. On cross-examination, D. Robinson testified that the reason she told the officers that the defendant lived in Kenner was because he was "back and forth" between Terry Hunter and his wife.

Lastly, Terry Hunter testified on behalf of the defense. Hunter testified that the defendant is her boyfriend of five years, and they have a son together. Hunter further testified that the night before the defendant's arrest, August 3, 2009, the defendant spent the night with her at her home at 500 Wall Boulevard, Apartment 96, in Gretna. According to Hunter, for the last five years, the defendant has spent 90 percent of the time living with her.

On cross-examination, Hunter testified that the defendant does not live with his mother at the Demarco address. However, since the defendant resides with her 90 percent of the time, Hunter testified "[w]hen he's not with me, I don't know what he's doing."[32]

---

[32]   *State v. Robinson*, 87 So.3d at 889-892 (footnotes in original).

*Claims for Relief*

A.    *Denial of motion to suppress statement and evidence (Claims 1, 2)*

Robinson claims that the state court erred in denying the defense motion to suppress his statement regarding his residence and the evidence seized illegally based upon the statement, which served as the basis for the search warrant application.    He contends the State did not satisfy its burden under state law of proving the admissibility of a purported confession or inculpatory statement.    He further contends the State failed to prove that he was advised of his *Miranda* rights or that he waived those rights freely and voluntarily.

On direct appeal, the Louisiana Fifth Circuit addressed two issues:    "(1) whether the defendant's statement regarding his address is inculpatory in nature such that the State's failure to meet the requirements of admission pursuant to LSA–R.S. 15:451 renders defendant's statement inadmissible at trial; and (2) if defendant's statement does not fit within the purview of LSA-R.S. 15:451 regarding admissibility, whether the State made the minimum requisite showing that defendant was advised of his constitutional rights and waived same before making his statement."    The court of appeal concluded that the remark by Robinson regarding his address was not an inculpatory statement or confession subject to Louisiana Revised Statute 15:451 with respect to laying a foundation for admission of a confession, and further held that he was advised of his *Miranda* rights before questioning. In rejecting the claim, the Louisiana Fifth Circuit reasoned:

> In this two-part assignment of error, defendant argues that the State failed to present clear and convincing evidence that he was read his *Miranda* rights and

that he knowingly, intelligently, freely and voluntarily waived his rights prior to providing his statement. Specifically, defendant contends that Lieutenant Jewell testified at the suppression hearing that he was unsure as to whether he actually read the defendant his *Miranda* warnings. Additionally, defendant asserts that Lieutenant Jewell failed to provide a recitation of the exact *Miranda* warnings given to the defendant, while testifying at the suppression hearing. Thus, defendant argues that the State failed to meet the minimum legal prerequisites for admission of an alleged inculpatory statement. Moreover, defendant submits that because the statement at issue formed the basis of the "Application for Search," the trial court erred in denying defendant's motion to suppress evidence. Lastly, defendant contends that it was reversible error to reopen the suppression hearing.

In response, the State asserts that defendant did not give an inculpatory statement to police. Specifically, the State argues that the only statement given to police at the time of defendant's arrest was his address. According to the State, at the time of defendant's arrest, he informed officers that he did not reside at 3232 Kentucky Avenue, but rather resided at 1110 Demarco Street. Thus, the State submits that the law cited by defendant pertaining to admission of a confession is inapplicable. Regardless, the State contends that the testimonies of Lieutenant Jewell and Detective Dufrene established that defendant was advised of his *Miranda* rights prior to giving the alleged statement.

**March 4, 2010 Suppression Hearing**

On August 24, 2009, defendant filed a motion to suppress the evidence, confession and identification.[33]   Defendant's motions were heard on March 4, 2010. Prior to calling its first witness, the State clarified for the court that since no inculpatory statements were made by the defendant, it would only be proceeding with the hearing on defendant's motion to suppress evidence. Defense counsel disagreed with the State's characterization of the facts, explaining that the defendant's statement to the officers that he lived at 1110

---

[33]   The record does not reflect that defendant's motion to suppress the identification was disposed of prior to trial. However, it is well established that a defendant waives all pending motions by permitting trial to proceed without raising the issue that his pre-trial motions were neither heard nor ruled upon.   *State v. Thomas*, 08–1171, p. 5 (La. App. 5 Cir. 4/28/09), 13 So.3d 595, 599 (citing *State v. Fletcher*, 02–707, p. 5 (La. App. 5 Cir. 12/30/02), 836 So.2d 557, 559, *writ denied*, 03–0409 (La. 10/10/03), 855 So.2d 334).

Demarco Street and not 3232 Kentucky Avenue was used in the probable cause affidavit and could possibly be construed as inculpatory.

Thus, the hearing proceeded on both motions, with the State calling Lieutenant Jewell to the stand. At the suppression hearing, Lieutenant Jewell testified that, prior to defendant's arrest, he had been conducting an ongoing narcotics investigation of the defendant. Lieutenant Jewell further testified that on August 4, 2009, he stopped the defendant at a gas station for several outstanding attachments. After placing defendant under arrest and obtaining his verbal consent, the defendant's vehicle was searched. [34]   Lieutenant Jewell testified that at the time the defendant was placed under arrest, either he or Sergeant Shane Kline advised the defendant of his *Miranda* rights. However, after refreshing his memory with a copy of the police report, Lieutenant Jewell clarified that he, and not Kline, advised the defendant of his constitutional rights. Finally, Lieutenant Jewell testified that subsequent to the defendant's arrest, he obtained and executed a search warrant at 3232 Kentucky Avenue based on the information gained pursuant to defendant's arrest.

The trial court denied defendant's motion to suppress. First, the trial court found the consent to search defendant's car was validly obtained. The trial court also determined that the search warrant prepared subsequent to defendant's arrest, which listed defendant's address as 3232 Kentucky Avenue, to be valid. Finally, the court noted that, while Lieutenant Jewell did not testify regarding the litany of constitutional rights given to defendant at the time of his arrest, it was of no moment since there was no inculpatory statement to suppress. Specifically, the court noted that a response to police questioning as to where someone lives is not inculpatory. Thus, the trial court ruled that the State could use defendant's statement regarding his address at trial.

On the morning of trial, the State again informed the court and defense counsel that it intended on using the defendant's statement that he lived at 1110 Demarco Street, at trial. The State also noted that, although the trial court did not suppress the statement, it was willing to call Lieutenant Jewell to the stand again, outside the presence of the jury, so that the colloquy of constitutional

---

[34]  On cross-examination, Lieutenant Jewell admitted that other than his own report, he had not tape recorded or obtained written documentation that evidences the fact that defendant agreed to have his automobile searched.

rights read to defendant at the time of his arrest could be elicited on the record. Defendant objected to the re-opening of the hearing to which the State clarified that it was not seeking to re-open the suppression hearing, since the court ruled in its favor, but rather was seeking to "understand" the court's prior ruling regarding the defendant's statement. The trial court decided that it wished to hear from Lieutenant Jewell to "clarify exactly what was done" and to "ascertain that the defendant got and understood his rights." Specifically, the court reasoned:

> Again, and just so the record's clear, I think it's—as the state said, again, it was succinct. The purpose of the hearing is not to punish the state for not—the purpose to determine whether the defendant's constitutional rights were violated. If they were violated then, I'm going to suppress it. If they weren't, then, there's no issue.

Thus, prior to trial, Lieutenant Jewell testified for a second time that the defendant was read his *Miranda* rights when he was placed under arrest and before any statements were made. Lieutenant Jewell specifically testified to the litany of *Miranda* rights given, and that the defendant understood his rights, did not ask for an attorney, was not threatened or coerced into making a statement, and did not promise him anything in exchange for his statement. After hearing the testimony, the court found as follows: "I think it's clear that the defendant was read his rights, read the proper rights, and understood his rights. So, the motion to suppress is denied."

The statement at issue is that the defendant told the officers at the time of his arrest that he lived at 1110 Demarco Street with his mother.[35]  Thus, the inquiry in the present matter is two-fold: 1) whether the defendant's statement regarding his address is inculpatory in nature such that the State's failure to meet the requirements of admission pursuant to LSA–R.S. 15:451 renders defendant's statement inadmissible at trial; and 2) if defendant's statement does not fit within the purview of LSA–R.S. 15:451 regarding admissibility, whether the State made the minimum requisite showing that defendant was advised of his constitutional rights and waived same before making his statement.

---

[35]  Defendant did not specifically enunciate in his brief that the statement at issue concerns the address defendant provided to the police at the time of his arrest; however, this can be surmised by the fact that it was the only "statement" ever given to police by the defendant.

All statements which are damaging in nature are not inculpatory. *State v. Bodley*, 394 So.2d 584 (La. 1981). "As contemplated by article 768, an 'inculpatory statement' refers to an out of court admission of incriminating facts made by the defendant after the crime has been committed. An incriminating statement is one which admits a fact tending to establish guilt, or from which guilt may be inferred." *State v. Seymour*, 449 So.2d 1189, 1192 (La. App. 2 Cir. 1984), *writ denied*, 452 So.2d 173 (La. 1984); *State v. Neslo*, 433 So.2d 73, 82–83 (La. 1983); *State v. Quimby*, 419 So.2d 951, 956 (La. 1982); *State v. Brumfield*, 329 So.2d 181, 187 (La. 1976).

In *State v. Andrus*, 250 La. 765, 199 So.2d 867 (La. 1967), the Louisiana Supreme Court noted that incriminating statements made by the accused are placed in three categories. The first is the confession which admits to the guilt of the crime charged. The second is the admission which involves the existence of criminal intent. The third is the admission or acknowledgment of facts which tend to establish guilt but which do not involve the existence of criminal intent. *Id.*, 199 So.2d at 880. The court concluded that remarks which are not express admissions of guilt, or facts showing criminal intent, can be introduced without the foundation necessary for admitting a confession, despite the fact that the statement might be considered inculpatory. *Id.*, 199 So.2d at 881.

Here, the alleged inculpatory statement is defendant's remark to police officers that that [sic] he lived at 1110 Demarco Street with his mother. After speaking with the defendant's mother at the Demarco Street address provided by defendant, it was established that the defendant did not live at that address. Based on information obtained from the defendant's mother along with other evidence to suggest that defendant had lied about his address, officers executed a search warrant at 3232 Kentucky Avenue, the address believed to be where defendant and his wife resided. It was at the Kentucky Avenue residence where officers seized the cocaine and weapons upon which defendant was charged. Thus, applying the definitions of inculpatory to the statement made by defendant in light of the attendant facts and circumstances, defendant's statement regarding his address, which was not the address where the contraband was found, is not inculpatory in nature. In fact, defendant's statement regarding his address may be considered exculpatory in nature and used by the State to demonstrate inaccuracies in the statement and to prove guilt by implication.

In sum, because the address provided by defendant is not an express admission of guilt or a fact tending to show criminal intent, the State was entitled to use defendant's statement at trial without first establishing the necessary foundation for admission of a confession. Therefore, appellant erroneously cites to jurisprudence regarding the admission of confessions in support of his argument when the State is only required to show that defendant had been advised of his constitutional rights and waived them before making his statement.

In *State v. Malveaux*, 499 So.2d 301 (La. App. 1 Cir. 1986), *writ denied*, 505 So.2d 1138 (La. 1987), as in the instant case, the State used exculpatory statements made by the defendant in conjunction with contradictory evidence in order to prove defendant's guilt. The defendant argued that the statements were inadmissible because they were "admissions" offered for the inference of guilt, thus, the defendant asserted that prior to their use, the State would have to set forth the formal requirements. In affirming the trial court's ruling allowing the statements into evidence, the appellate court relied on *Andrus*, *supra*, noting:

> [R]emarks which are not express admissions of guilt or facts showing criminal intent can be introduced without the foundation necessary for admitting a confession, despite the fact that the statement might be considered inculpatory. *Andrus*, 250 La. at 765, 199 So.2d at 881.

Of course, truly exculpatory statements are never used by the prosecution. Statements which the defendant intended to be exculpatory are instead used to impeach his testimony at trial or to demonstrate inaccuracies in the statement he gave under interrogation and thus to prove guilt by implication. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In *Miranda*, the Court demanded that the advice-of-rights warning be given regardless of whether the statements are considered inculpatory or exculpatory.

Based on *Andrus*, the appellate court determined that the defendant's statements were exculpatory and did not purport to be confessions under LSA–R.S. 15:451 because they did not involve the existence of criminal intent. Therefore, the court held that the State was only required to show that defendant had been "advised of his constitutional rights and waived the same before making his statements." *Malveaux*, 499 So.2d at 304–05.

In the instant case, just as in *Malveaux*, defendant's statement regarding his address does not purport to be a confession pursuant to LSA–R.S. 15:451. Thus, the State was only required to show that defendant was advised of his *Miranda* rights and waived them prior to making his statement. Based on the testimony elicited at the suppression hearing and at trial, we find that the State met its burden.

At the March 4, 2011 suppression hearing, Lieutenant Jewell testified, after refreshing his memory with his police report, that after he placed defendant under arrest for outstanding warrants, he advised the defendant of his *Miranda* rights. Additionally, on March 11, 2011, outside the presence of the jury, the trial court exercised its discretion and permitted Lieutenant Jewell to testify for a second time regarding the constitutional rights read to defendant prior to the alleged statement being made.[36]    This time, Lieutenant Jewell specifically testified that he read defendant his *Miranda* rights from a card he carries with him. Lieutenant Jewell then enunciated the exact rights that were read to defendant. Lieutenant Jewell further testified that defendant understood his rights, did not ask for an attorney, was not threatened or coerced into making a statement, and that he did not promise the defendant anything in exchange for his statement.

Lieutenant Jewell also testified for a third time at trial. At trial, Lieutenant Jewell testified consistently with his prior testimony and informed the jury of the specific *Miranda* rights defendant was advised of prior to providing his address to him after his arrest.[37]    Lieutenant Jewell also confirmed that the

---

[36]    Within this assignment of error, defendant contends that it was reversible error for the trial court to re-open the suppression hearing, however, defendant did not brief this argument. Thus, pursuant to Rule 2–12.4 of the Uniform Rules, Courts of Appeal, defendant's argument may be deemed abandoned. However, even if defendant had briefed this issue, it is well established that a trial judge has discretion as to whether to permit a second suppression hearing or to re-open a suppression hearing prior to trial. *State v. Cole*, 434 So.2d 1103 (La.1983). Moreover, it is noted that regardless of whether the suppression hearing was re-opened to allow further testimony from Lieutenant Jewell, he testified at trial in detail that the defendant was advised of his *Miranda* rights, which this Court may consider on appeal.

[37]    At trial, Lieutenant Jewell stated: "We advised him that he was under arrest for his attachments and his constitutional rights as per *Miranda*. Those rights are, before we ask you any questions, you must understand your rights. You have the right to remain silent, anything you say can and will be used against you in court. You have the right to talk with a

defendant understood his rights, was not coerced, threatened, or promised anything in exchange for a statement. After advising him of his rights, Lieutenant Jewell testified that defendant provided him with verbal consent to search his vehicle, and when asked where he lived, the defendant indicated to the officers that he lived at 1110 Demarco Street with his mother.[38]

In determining whether the trial court's ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence adduced at the suppression hearing, but may also consider the evidence presented at trial. *State v. Huntley*, 08–125, p. 6 (La. App. 5 Cir. 5/27/08), 986 So.2d 792, 796 (citing *State v. Brumfield*, 96–2667, p. 43 (La. 10/20/98), 737 So.2d 660, 683, *cert. denied*, 526 U.S. 1025, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999)). Moreover, a trial court's determination on the motion to suppress should not be disturbed on appeal, unless it is clearly wrong. *State v. Addison*, 08–461, p. 12 (La. App. 5 Cir. 2/10/09), 8 So.3d 707, 716.

In the present matter, there is no suggestion in the record that defendant was not adequately advised of his rights at the time of his arrest. He was made fully aware that any statement he made to the officers might be used against him, and there is no evidence challenging the officer's testimony that the defendant understood his rights. Finding Lieutenant Jewell's testimony to be credible, the trial court did not abuse its discretion by denying defendant's motion to suppress the statement. Thus, we find that the trial court did not err in denying defendant's motion to suppress statement, or in the denial of defendant's motion to suppress evidence.[39]

---

lawyer for advice before we ask you any questions, and to have him with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish. And if you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time until you talk to a lawyer."

[38] At trial, Lieutenant Jewell's testimony was further corroborated by Detective Dufrene who testified that he was present when Lieutenant Jewell advised defendant of his *Miranda* rights.

[39] Defendant's sole argument as to his assignment of error regarding the denial of his motion to suppress evidence is that "since the statement formed the basis of the Application for Search and was illegally obtained, the Motion to Suppress Evidence should have been granted." First, without further support for this argument regarding the denial of his motion to suppress evidence, defendant's assignment may be deemed abandoned pursuant to Rule 2–12.4 of the Uniform Rules, Courts of Appeal. Second, since defendant's only argument that

Even assuming *arguendo* that the trial court erred in denying defendant's motion to suppress statement, the erroneous admission of a statement or confession is subject to a harmless error analysis. *State v. Harris*, 2001–2730, p. 26 (La.1/19/05), 892 So.2d 1238, 1260, *cert. denied*, 546 U.S. 848, 126 S.Ct. 102, 163 L.Ed.2d 116 (2005). An error is harmless if it can be said beyond a reasonable doubt that the guilty verdict rendered in the case was surely unattributable to that error. *State v. Robertson*, 2006–1537, p. 9 (La.1/16/08), 988 So.2d 166, 172; *State v. Barbour*, 2009–1258, p. 14 (La. App. 4 Cir. 3/24/10), 35 So.3d 1142, 1150, writ denied, 2010–0934 (La.11/19/10), 49 So.3d 396, *cert. denied, Barbour v. Louisiana*, –––U.S. ––––, 131 S.Ct. 1477, 179 L.Ed.2d 302 (2011).

Considering all of the evidence, we find that beyond a reasonable doubt, the guilty verdict rendered in the instant case was not attributable to any possible error by the trial court in denying the defendant's motion to suppress the statement.[40]

The Louisiana Supreme Court denied his related writ application without assigning additional reasons.

In *Miranda v. Arizona*, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."   384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).   Custodial interrogation consists of questioning by law enforcement agents "after

---

his motion to suppress evidence should have been granted is based on an "illegally obtained statement" which formed the basis of a search warrant, we find that because defendant's statement was not illegally obtained, defendant's argument lacks merit.

[40]  See discussion regarding sufficiency of evidence, defendant's Assignment of Error Number 5.   *State v. Robinson*, 87 So.3d at 898-904 (footnotes in original).

a person has been taken into custody."  *Id.*  The "term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Rhode Island v. Innis*, 446 U.S. 291, 300-301 (1980).  An incriminating response is "any statement – whether inculpatory or exculpatory – that the prosecution may seek to introduce at trial.  *Id.* at 301 n. 5.

"After initially being advised of his *Miranda* rights, the accused may himself validly waive his rights and respond to interrogation."  *Edwards v. Arizona*, 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *see also North Carolina v. Butler*, 441 U.S. 369, 372–76, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979).  Any waiver must be "knowing and voluntary," *Butler*, 441 U.S. at 373, 99 S.Ct. 1755, and when the defendant files a motion to suppress a statement that was allegedly made in contravention of his *Miranda* rights, the State bears the burden of proving by a preponderance of the evidence that the defendant's waiver was made voluntarily, knowingly, and intelligently.  *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

The law "does not impose a formalistic waiver procedure that a suspect must follow to relinquish [*Miranda* ] rights."  *Berghuis v. Thompkins*, 560 U.S. 370, 385, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010).  The State "does not need to show that a waiver of *Miranda* rights was express."  *Id.* at 384.  "[W]aiver of *Miranda* rights may be implied through 'the defendant's silence, coupled with an understanding of his rights and a course of conduct

indicating waiver.' " *Id.* (citation omitted).    "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent."    *Id.*

To the extent Robinson asserts that his statement was improperly admitted into evidence in violation of state law, that claim is not cognizable on federal *habeas* review.    *See Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011) (federal *habeas* review does not lie for errors of state law).    *Habeas corpus* review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir.2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir.1992).

To the extent he contends the statement should have been suppressed because the evidence fails to demonstrate that he was advised of his rights under *Miranda* or that he voluntarily waived those rights before making the statement, that claim is meritless.    The state court's finding that the State satisfied its burden of showing Robinson was advised of his *Miranda* rights and voluntarily waived them before making a statement was neither contrary to nor an unreasonable application of United States Supreme Court law.

Robinson maintains the evidence adduced at the pretrial suppression hearing did not establish that "[he] even had his rights read let alone that a valid waiver [had been] executed."    He emphasizes in his traverse the inculpatory nature of the statement at issue and the necessity for *Miranda* warnings.    He further argues that "he never waived [his

*Miranda* rights], such to imply that he had given consent to be questioned or interrogated beyond the traffic stop and arrest."[41]    He also challenges the trial court's ability to "reopen" the suppression hearing once trial had begun and a jury had been selected in order to consider additional testimony by Lt. Jewell to support the denial of the motion to suppress. The State, on the other hand, contends the record shows that Robinson was advised of his rights and voluntarily waived them.    The State points to Lt. Jewell's testimony at the suppression hearing in connection with the police report, that he personally advised Robinson of his *Miranda* rights, as well as the additional testimony offered at trial as to the specific rights read and Robinson's understanding and waiver of those rights, as further corroborated by Detective Eric Dufrene's testimony at trial.    As to the subsequent additional testimony, the State notes that "the issue was not raised earlier by defense counsel at the suppression hearing because as all parties acknowledged, the petitioner did not give any inculpatory statements to police."[42]

The Louisiana Fifth Circuit properly considered all relevant testimony adduced,

---

[41]  Rec. Doc. 24, p. 3.

[42]  Of note, incriminating responses protected by *Miranda* include "any response – whether inculpatory or exculpatory – that the prosecution may seek to introduce at trial." *Rhode Island v. Innis*, 446 U.S. at 302 n. 5 (quoting *Miranda v. Arizona*, 384 U.S. 436, 476–77 (1966) ("no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory' ... [since] statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication")). Nevertheless, the issue was more fully explored and adequately addressed with Lt. Jewell at a subsequent hearing on the matter and at trial.

including that offered at trial by Lt. Jewell along with Detective Dufrene's corroborative testimony, all of which demonstrated Robinson was advised of his *Miranda* rights prior to giving the statement and that he freely answered the officer's question about his residence. The state court's authority under state law regarding what evidence it may consider in determining a suppression issue and whether or not to reopen a hearing is not a matter for federal *habeas* review.[43]    Rather, this Court's review is limited to determining issues of constitutional dimension, that is, whether the state court's adjudication of the suppression issue was contrary to or an unreasonable application of United States Supreme Court law.

At the pretrial suppression hearing, Lt. Jewell established that Robinson was advised of his *Miranda* rights.[44]    No testimony was elicited from Lt. Jewell at the time regarding the

---

[43]  The court of appeal noted that this claim was effectively abandoned by failure to brief the argument, Rule 2-12.4 of the Uniform Rules, Courts of Appeal, and alternatively, that even if it were to consider the claim, the argument was meritless.    *State v. Robinson*, 87 So.3d at 903 n. 14.    In any event, federal courts do not sit to review the propriety of state-court evidentiary rulings under state law, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. *Lisenba v. People of the State of California*, 314 U.S. 219, 236–37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir.1991) (Habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.). Here, Robinson was not unfairly prejudiced by the trial court's actions considering the State plainly sought only clarification of the ruling, not to reopen the hearing, primarily because the ruling denying suppression was already favorable, and additionally under state law, the appellate court was entitled regardless to consider all of the evidence, including that adduced at trial, in determining whether or not the denial of the motion to suppress was proper.    *See State v. Seward*, 509 So.2d 413 (La.1987); *State v. Picot*, 2009-0967, 2009 WL 10297504, at *3 (La. App. 4th Cir. 12/1/09).

[44]  State Rec., Vol. 2 of 7, Transcript of Suppression Hearing, pp. 9, 18-19.

actual litany of rights read to Robinson or the circumstances surrounding a waiver of those rights.   At the subsequently reopened hearing, however, Lt. Jewell further testified, in relevant part:

> Q. After you placed him under arrest, did you advise him of his rights?
>
> A. Yes, I did.
>
> Q. And what are those rights that you advised him?
>
> *     *     *     *
>
> Q. What are those rights?
>
> A. Well, I actually read them to him from a card I carry.
>
> Q. And what is that?
>
> A. They are the Miranda rights.     Before we ask you any questions, you must understand your rights.     You have the right to remain silent; anything you say can, and will be used against you in court; you have the right to talk to a lawyer for advice before we ask you any questions, and to have that lawyer with you during questioning; if you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish; if you decide to answer questions now without a lawyer present, you will still have the right to stop answering questions at any time until you talk to a lawyer.
>
> Q. Did he appear to understand those rights?
>
> A. Yes, he did.
>
> Q. Did he appear capable of understanding those rights?
>
> A. Yes, he did.
>
> Q. Did he ask for an attorney at any point?

A. No, he did not.

Q. Did you force, threaten or coerce him into making any statements?

A. No, I did not.

Q. Did you promise him anything in exchange for making any statements?

A. No, I did not.

Q. And did he make any statements thereafter?

A. Yes, he did.[45]

Lieutenant Jewell similarly testified to these same events during trial.[46]   His testimony was corroborated by Detective Dufrene.[47]   The State presented credible evidence that Robinson received and understood his *Miranda* rights and willingly answered Lt. Jewell's question as to where he resided.   He had an opportunity to invoke his *Miranda* rights but instead readily told officers where he lived when that question was posed.   *See North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979) (a waiver of *Miranda* rights may be "inferred from the actions and words of the person interrogated").   Robinson does not contend, and there is no evidence to show, that he did not understand the *Miranda* warning.   He also provides no evidence to suggest that he was either coerced or forced to respond to the officer's question.

---

[45]   State Rec., Vol. 1 of 7, Trial Transcript, pp. 37-38.

[46]   *Id.* at 56-57.

[47]   *Id.* at 118-119.

The state court concluded, based on all of the evidence adduced, that Robinson was advised of his rights under *Miranda* and that his statement was freely and voluntarily made. That determination is a reasonable one based on the record, and it was neither contrary to nor an objectively unreasonable application of the Supreme Court precedents discussed above.    Therefore, the intertwined claims of error with respect to suppression of his statement and suppression of the evidence (based upon use of the alleged illegally obtained statement to obtain the search warrant) do not warrant federal *habeas* relief.

B.    *Improper Amendment of Bill of Information and Denial of Continuance (Claims 3, 4)*

In these related claims, Robinson asserts that the trial court erred in permitting the State to amend the bill of information on the morning of trial to reflect an additional predicate conviction in support of the firearms possession charge, and that the trial court erred in denying the defense's oral motion for a continuance of trial under these circumstances.

On the morning of trial, the State sought to withdraw its *Prieur* notice and amend the Bill of Information, Count Three, to include a second predicate conviction, over defense counsel's objection, as follows:

> And the District Attorney further gives the Court to understand and be informed that on or between August 4, 2009 and August 5, 2009, the said DARREN ROBINSON violated R.S. 14:95.1 in that he did have in his possession a firearm, to wit:    a Springfield Armoire Model XP, .45 cal. ACP and Glock Model 23, .40 cal. Handgun, having been previously convicted of the crime of Possession with Intent to Distribute Cocaine, in violation of R.S. 40:967 A, under case number 97-0007, Division "S", in the 24th Judicial District Court, Parish of Jefferson, on 7/30/97, and possession of cocaine in violation of R.S.

> 40:967 C, under case number 426-892, Section H in the Criminal District Court for the Parish of Orleans on 10/16/02.[48]

The trial court reasoned that the defense was in no way prejudiced by the amendment.

On direct appeal, the Louisiana Fifth Circuit rejected Robinson's claims of error. The appellate court cited Louisiana Supreme Court precedent, which clearly established that evidence of both predicate convictions was admissible at trial as proof of an element of the crime charged, and that either conviction, if proved, was sufficient to support his conviction under Louisiana Revised Statute 14:95.1.   The appellate court also found no error in the denial of a continuance where the defense could not establish any prejudice in his defense on the merits as required under Louisiana Code of Criminal Procedure article 489.[49]   The Louisiana Supreme Court denied relief without additional reasons.

The state court's determination that the amended bill of information and denial of the motion for continuance did not violate state law is not subject to review in this forum. Indeed, to the extent petitioner may claim that the ruling permitting amendment to the bill

---

[48]   State Rec., Vol. 1 of 7, Amended Bill of Information.

[49]   Louisiana Code of Criminal Procedure article 489 provides:

If it is shown, on motion of the defendant, that the defendant has been prejudiced in his defense on the merits by the defect, imperfection, omission, uncertainty, or variance, with respect to which an amendment is made, the court shall grant a continuance for a reasonable time. In determining whether the defendant has been prejudiced in his defense upon the merits, the court shall consider all the circumstances of the case and the entire course of the prosecution. If it becomes necessary to discharge the original jury from further consideration of the case, the trial before a new jury will not constitute double jeopardy.

of information and denying the motion for continuance constituted error or an abuse of discretion under Louisiana law, he has not stated a cognizable claim for federal *habeas* review.    28 U.S .C. § 2254(a); *see also Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").    Thus, insofar as Robinson's claims rest upon the proper interpretation and application of state procedural law, they do not provide him a basis for federal *habeas* relief.

To the extent the rulings implicate due-process concerns, however, the issues do involve cognizable federal *habeas* claims.    Due process requires that the court grant the writ only when the errors of the state court make the underlying proceeding fundamentally unfair.    *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir.1986).    The United States Supreme Court has held that an indictment or bill of information is sufficient if it both informs the defendant of the accusation against him so as to enable him to prepare his defense, and affords him protection against double jeopardy.    *United States v. Debrow*, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953).

As the state appellate court's factual findings reflect, the record showed that the firearms possession charge itself was not substantially altered by the amendment simply adding another felony predicate in support of the charge, and the defense already had ample, timely notice from the State that it intended to introduce evidence of this additional prior felony offense at trial of this matter.    The State had filed a "Notice of Intent to Use Evidence

of Other Crimes" five months before trial that referenced several prior felony convictions involving possession of cocaine, and specifically included the 2002 Orleans Parish conviction, in order to establish Robinson's intent, motive and guilty knowledge.    In fact, in advance of trial, the court conducted a hearing where it rejected the defense argument that evidence of the other crimes at issue would be more prejudicial than probative, and ruled that the State could use evidence of these other crimes at trial.[50]

The record clearly supports the state court's findings that Robinson was on notice of the charges he faced and the prior convictions the State planned to rely upon such that he was able to prepare and present a defense to the firearms possession charge.    In contrast, there is nothing to support Robinson's contention that he was prejudiced by the amendment to the bill of information.    The nature of the charges were clear to defense counsel and under the circumstances the planned defense of the matter would not have changed. Therefore, this Court finds this claim to be without merit.

Based on these same facts, Robinson contends he should have been granted a continuance due to the alleged surprise and prejudicial nature of the amendment to the bill of information.    This claim similarly fails to establish any violation of due process.

The United States Supreme Court has made it clear that not every denial of a request

---

[50] State Rec., Vol. 1 of 7, Notice of Intent to Introduce Other Crimes; State Rec., Vol. 2 of 7, Transcript of Hearing held March 4, 2010, pp. 33-36 (the trial court ruled that evidence of the convictions was proper and the prosecutor indicated he would simply introduce the bills of information with the convictions and his prints).

for a continuance is a denial of due process:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964) (citations omitted).

The trial court is tasked with balancing these interests in deciding whether or not to grant or deny a continuance under the particular circumstances presented, but it is clear that when a denial of a continuance forms a basis of a petition for a writ of *habeas corpus*, not only must there have been an abuse of discretion, but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process.    *Skillern v. Estelle*, 720 F.2d 839, 850 (5th Cir. 1983).

In rejecting the claim of error on direct appeal, the Louisiana Fifth Circuit explained:

> In support of his contention that his defense was prejudiced by the State's amendment and the trial court's denial of his motion for continuance, defendant relies on the Louisiana Supreme Court opinion of *State v. Gibson*, 322 So.2d 143 (La.1975). In *Gibson*, the defendant was charged with distribution of heroin as a result of an undercover operation wherein Officer Charles Spillers arranged, through an informer, for the purchase of heroin from the defendant. *Id.* Originally, the bill of information and bill of particulars furnished by the State set forth that the defendant distributed heroin directly to Officer Spillers. Four days before trial, the State amended the bill of information by deleting the provision that indicated that the defendant had distributed heroin "to C. Spillers" but did not disclose any information concerning the informer to whom the defendant actually distributed the

heroin. *Id.*, 322 So.2d at 144. On the morning of trial, defendant filed a continuance based on the amendment. The defendant argued that it was necessary for the defense to have time to find out the name and whereabouts of the informer to whom the sale was allegedly made in order to properly prepare his defense. The trial court denied defendant's motion and the Louisiana Supreme Court reversed, finding that pursuant to LSA–C.Cr.P. art. 489, defendant was prejudiced in the preparation of his defense. In reaching its decision, the Court reasoned that as a result of the amendment, the defendant was confronted for the first time with a change by the State of the identity and possible testimony of an informant, which might have been helpful and highly relevant to the defense. Moreover, the Court concluded that defendant's opportunity to cross-examine Officer Spillers would not be a substitute for an opportunity to examine the informer. *Id.*, 322 So.2d at 145.

The defendant in the instant matter argues that this case is similar to *Gibson* in that he was confronted with additional evidence for which he had to defend against, and thus, a continuance to allow defendant to confront this evidence should have been granted. *Gibson*, however, is distinguishable from the instant matter. Here, the State did not amend the bill of information to include information that defendant did not have the opportunity to prepare for. Unlike an absent and unidentified witness who may be used by the defendant in support of his defense as in *Gibson*, we find that the amendment to the bill of information to add a second predicate offense did not surprise or prejudice the defendant who had knowledge of his prior convictions and knowledge, as far back as October 2009 when the State filed its *Prieur* notice, that the State may use them at trial. Additionally, no prejudicial substantive changes were made to the charges that would affect the merits of the defendant's defense. Moreover, the relevancy of defendant's prior convictions is well supported by law which requires that the State prove defendant's convicted felon status, an essential element of the crime under LSA–R.S. 14:95.1. *See Sanders, supra.* (*See also State v. Davis*, *supra*, holding, the State's amendment to the original indictment charging defendant with first degree murder to add the charge of second degree murder on the morning of trial did not constitute prejudicial surprise. The Court reasoned that proof of a specific intent killing as an element of the offense was required under both the original indictment for first degree murder and the amended indictment for second degree murder. Thus, the defendant would have been required to defend on this issue regardless of the charge.).

Under these circumstances, namely defendant's prior notice, lack of surprise

> and prejudice, the requirement that the State prove the elements of
> defendant's prior felony status pursuant to LSA–R.S. 14:95.1, and the
> jurisprudence which permits the bill of information to reflect more than one
> predicate conviction to support the State's charge, we find that the trial court
> did not abuse its discretion in denying defendant's motion to continue.[51]

Here, the trial court was not presented with any legitimate justification for extra time to prepare a defense or any evidence demonstrating actual prejudice to warrant a continuance of trial.    Given the broad discretion afforded a trial court, a decision to deny a continuance under these circumstances was not an abuse of discretion so arbitrary and fundamentally unfair that it violates due process.    Accordingly, the state court's denial of relief on these claims was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

C.    *Sufficiency of the Evidence (Claim Five)*

Robinson claims that the evidence was insufficient to support his conviction because the State failed to prove that he had dominion or control over the narcotics or the weapons. In rejecting this claim on direct review, the court of appeal held:

> The defendant was charged, tried, and convicted of possession of cocaine in
> excess of 200 grams, but less than 400 grams, and of possession of a firearm
> by a convicted felon. The defendant now argues that the evidence presented
> by the State failed to establish he had dominion and control over the weapons
> and cocaine found at his wife's residence. Specifically, the defendant asserts
> that since he did not reside at the residence where the contraband was seized,
> the State failed to establish that he had a connection and/or constructive
> possession over the cocaine or weapons recovered.
>
> The State responds that the evidence presented at trial was sufficient to

---

[51]   *State v. Robinson*, 87 So.3d at 907-908.

establish that the defendant maintained constructive possession of the contraband seized at 3232 Kentucky Avenue. Specifically, the State asserts that the evidence established that defendant maintained a residence with his wife at 3232 Kentucky Avenue based upon the testimony of the witnesses presented at trial, in addition to the physical evidence found at the home which proved the requisite dominion and control over the contraband.

The constitutional standard for testing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

An appellate court, in reviewing the sufficiency of evidence, must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier-of-fact that all of the elements of the crime have been proven beyond a reasonable doubt. *State v. Sosa*, 05–213 (La. 1/19/06), 921 So.2d 94, 99. Additionally, when circumstantial evidence forms the basis of the conviction, "the evidence, assuming every fact to be proved that the evidence tends to prove ... must exclude every reasonable hypothesis of innocence." LSA–R.S. 15:438. *Id.* "When a jury rationally rejects the hypothesis of innocence advanced by the defendant, that hypothesis fails, and 'the defendant is guilty unless there is another hypothesis which raises a reasonable doubt,' i.e., an 'alternative hypothesis ... sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.' " *Id.*, (citing *State v. Captville*, 448 So.2d 676, 680 (La.1984)). The trier-of-fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness, at its discretion. *Sosa*, 05–213, 921 So.2d at 101. The appellate court may impinge on the fact-finder's discretion only to the extent necessary to guarantee the fundamental due process of law. *Id.*

The jury may accept or reject, in whole or in part, the testimony of any witness. *State v. Rowan*, 97–21 (La. App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. Absent internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Caffery*, 08–717 (La. App. 5 Cir. 5/12/09), 15 So.3d 198, 202, *writ denied*, 09–1305 (La. 2/5/10), 27 So.3d 297. The credibility of witnesses is not to be reweighed on appeal. *Rowan*, 97–21, 694 So.2d at 1056.

In the instant case, defendant first challenges the evidence relating to his conviction for possession of cocaine in excess of 200 grams, but less than 400 grams, in violation of LSA–R.S. 40:967(F). In order to support a conviction for possession of cocaine pursuant to LSA–R.S. 40:967, the State must prove beyond a reasonable doubt that the defendant was in possession of the cocaine and that he knowingly possessed it. *State v. Walker*, 03–188 (La. App. 5 Cir. 7/29/03), 853 So.2d 61, 65, *writ denied*, 03–2343 (La. 2/6/04), 865 So.2d 738. The element of possession may be proven by showing that the defendant exercised either actual or constructive possession of the cocaine. *State v. Jones*, 08–20 (La. App. 5 Cir. 4/15/08), 985 So.2d 234, 241.

A person who is not in physical possession of narcotics may have constructive possession when the drugs are under his dominion and control. *State v. Manson*, 01–159 (La. App. 5 Cir. 6/27/01), 791 So.2d 749, 761, *writ denied*, 01–2269 (La.9/20/02), 825 So.2d 1156. A determination of whether there is "possession" sufficient to convict depends on the peculiar facts of each case. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. *State v. Toups*, 01–1875 (La. 10/15/02), 833 So.2d 910, 912.

Next, the defendant challenges the evidence relating to his felon in possession of a firearm conviction. In order to convict a person of violating LSA–R.S. 14:95.1, the State must prove: 1) the defendant possessed the firearm; 2) the defendant had a prior conviction for an enumerated felony; 3) the defendant possessed the firearm within ten years of the prior conviction; and 4) the defendant had the general intent to commit the offense. *State v. Watson*, 08–214, p. 7 (La. App. 5 Cir. 8/19/08), 993 So.2d 779, 784.

Similar to the law regarding possession of cocaine, likewise, actual possession of a firearm is not necessary to prove the possession element of LSA–R.S. 14:95.1. Constructive possession is sufficient to satisfy the element of possession. *State v. Day*, 410 So.2d 741, 743 (La.1982). A person is in constructive possession of a firearm if the firearm is subject to his dominion and control. *State v. Johnson*, 03–1228, p. 5 (La.4/14/04), 870 So.2d 995, 998. A person's dominion over a weapon constitutes constructive possession, even if it is only temporary in nature and even if control is shared. *Id.*, 03–1228 at 5,

48

870 So.2d at 999.

A defendant's mere presence in an area where a firearm was found does not necessarily establish possession. *Johnson*, 03–1228 at 5, 870 So.2d at 999. The State must prove that the offender was aware that a firearm was in his presence and that the offender had the general intent to possess the weapon. Guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence. *Id.*, 03–1228 at 5, 870 So.2d at 998.

Moreover, it is well established that being a resident of the premises where contraband is found is not in and of itself sufficient to prove constructive possession. *State v. Kelly*, 01–321, p. 4 (La. App. 5 Cir. 10/17/01), 800 So.2d 978, 982, *writ denied*, 01–3266 (La.11/1/02), 828 So.2d 565. And while it can be inferred that a defendant lives at a residence where contraband is discovered because his spouse lives there, there must be direct evidence (such as utility bills or other correspondence mailed to the defendant at that address), to support a finding of constructive possession. *See State v. Martin*, 98–1507 (La. App. 4 Cir. 4/5/00), 788 So.2d 1. Additionally, a subject can have constructive possession if he jointly possesses drugs with a companion and if he willfully and knowingly shares with his companion the right to control the drugs. *Id.*

Thus, in the present case, the crux of the controverted issue is whether defendant possessed the contraband, the cocaine and weapons and had the requisite intent to possess the contraband, i.e., guilty knowledge.

The defendant cites to *State v. Holland*, 2008–1116 (La. App. 4 Cir. 5/20/09), 13 So.3d 777, *State v. Bell*, 566 So.2d 959 (La.1990), and *State v. Jackson*, 557 So.2d 1034 (La. App. 4 Cir.1990), in support of his proposition that the requisite dominion and/or control was not established at trial since the defendant did not reside at 3232 Kentucky Avenue, the home in question. However, *Holland, supra, Bell, supra, and Jackson, supra*, are clearly distinguishable from the present matter.

In *Holland*, supra, the defendant was a passenger in a vehicle driven by James C. Moore. Moore's vehicle was stopped pursuant to a routine traffic stop. After stopping the vehicle and questioning Moore and the defendant, the officer became suspicious due to their conflicting stories. *Holland*, 08–1116 at 2, 13 So.3d at 779. The officer obtained consent from Moore to search the vehicle and found one rock of cocaine underneath the passenger seat where the

defendant was seated, and two underneath the driver's seat. The search also revealed two glass pipes used for smoking crack cocaine. *Id.*, 2008–1116 at 3, 13 So.3d at 779. Both Moore and the defendant denied ownership of the narcotics. At trial, the defendant testified that he did not know the crack cocaine was under his seat and did not know that the center console contained crack pipes. *Id.* at 2008–1116, p. 4, 13 So.3d at 780. The defendant further testified that other people had used Moore's truck. The defendant was convicted of possession of cocaine and appealed arguing that the evidence presented at trial was insufficient to support his conviction. Specifically, the defendant contended that constructive possession was not established. The court of appeal reversed the judgment of the trial court finding that a rational trier of fact could not have concluded that the defendant exercised dominion and control over the cocaine, or that he willfully and knowingly shared the right to control it with the driver. Specifically, the appellate court noted that the State failed to adduce evidence to suggest that either of the two crack pipes were warm, that the defendant was under the influence of crack cocaine, or that his fingerprints were on either of the two pipes. Thus, the court of appeal concluded that the evidence was equivocal as to whether the defendant knew that the crack cocaine was in the vehicle. *Id.*, 08–1116 at 9, 13 So.3d at 782–83.

In support of its reversal, the Louisiana Fourth Circuit Court of Appeal cited to *State v. Bell, supra, and Jackson, supra.*

In *Bell, supra*, police approached a stopped vehicle and requested that the occupants turn down their music. One officer noticed a package, later determined to be cocaine, among some cassette tapes in a plastic console between the front passenger and driver seats. Both the driver and passenger of the car were arrested and convicted of attempted possession of cocaine. The Louisiana Supreme Court reversed the passenger's conviction finding that the passenger's mere presence in the car close to the sealed package could not establish that the passenger exercised dominion and control over the package, or that he willfully and knowingly shared the right to control it with the driver. *Bell*, 566 So.2d at 960.

In *Jackson, supra*, the defendant threw down drugs at the sight of the police and ran into an apartment. The police followed and found the defendant standing at a homemade bar containing a glass pipe with cocaine residue, a mirror with trace amounts of cocaine, a razor blade with traces of cocaine, test tubes, glasses, and a bag containing material to dilute cocaine. The court of

appeal found that the evidence was insufficient to establish that the defendant exercised dominion and control over the objects which contained cocaine residue. Specifically, the appellate court reasoned that because there was no indication that the pipe was warm, that the defendant's fingerprints were on any of the contraband, or that the defendant was anything more than a guest in the apartment where the contraband was found, the evidence was insufficient to support the conviction.

The common thread in all three cases, *Holland, supra, Bell, supra, and Jackson, supra*, is that the defendants were guests in the locations where the contraband was retrieved. Moreover, the contraband was found in areas belonging to someone else, not the defendant. Additionally, the facts and evidence presented in these cases did not establish the defendants' dominion or control over the subject contraband other than to suggest that the defendants' mere presence in the subject locations where the drugs were seized were enough to convict. Whereas, in the present case, the evidence presented by the State established that the defendant was more than a guest and did, in fact, maintain a residence at 3232 Kentucky Avenue, with his wife of 24 years, based on evidence seized from the home, including: the presence of his clothing, documentation containing his name with the Kentucky address on it, the fact that he was driving a vehicle rented by his wife, possession of a key that opened the front door to the home, possession of large quantities of money and a tally sheet (which were also present in the home), coupled by the fact that the defendant's mother testified that he did not reside with her, but rather was back and forth between his girlfriend's house and his wife's house on Kentucky Avenue in Kenner.

Here, unlike *Holland, supra, Bell, supra, and Jackson, supra*, we find that the evidence supports a finding that defendant had dominion and control over the cocaine and firearms sufficient to constitute constructive possession based on the evidence established at trial and the jurisprudential authority discussed *infra.*

In *State v. Marshall*, 02–1067 (La. App. 5 Cir. 2/25/03), 841 So.2d 881, *writ denied*, 03–0909 (La.9/26/03), 854 So.2d 345, a case factually analogous to the present matter, the defendant was convicted of possession of cocaine with intent to distribute. Based on information received by the narcotics division, officers initiated surveillance on the defendant. During the surveillance, the defendant was observed in a green Ford Explorer participating in what officers believed to be a hand-to-hand drug transaction. The defendant was

detained and a bag of cocaine was retrieved from his person, along with $18.00 in cash and a set of keys. During the month prior to defendant's arrest, police conducted a surveillance on what they believed to be the defendant's apartment at 3401 Edenborn Drive in Metairie. During the extended surveillance, on three occasions, the officers observed the defendant leaving the apartment complex in the Ford Explorer. Thus, after arresting the defendant, the officers obtained a search warrant for the Edenborn apartment. The officers used the keys found on defendant at the time of his arrest to open the door to the apartment. Upon executing the search warrant, the officers discovered 38 individually wrapped rocks of crack cocaine along with $830.00 in cash. The defendant appealed his conviction asserting that the State failed to prove that he possessed the cocaine found at the Edenborn apartment.

This Court affirmed defendant's conviction based on the fact that defendant was seen on three occasions leaving the apartment complex in the Ford Explorer regularly used by the defendant and which was registered to his wife. Further, this Court noted that the officers found mail addressed to the defendant and his wife at the Edenborn address indicating a connection between defendant and the apartment. Moreover, this Court determined that the defendant was in possession of the key to the apartment when he was arrested. Finally, this Court found that although the lease was in the defendant's wife's name, she and the defendant were married, he frequently used her truck, and mail was found addressed to the defendant at the apartment. Thus, this Court reasoned that it could be surmised that the defendant and his wife shared the residence at Edenborn.

This Court also found that the evidence put forth by the defense which established that some of the mail seized at the apartment was addressed to the defendant at a South Clark Street address and a D'hemecourt Street address, was insufficient to overturn defendant's conviction. Specifically, Brenda Price testified that on the date of defendant's arrest, the defendant was living with her at the South Clark Street address. Ms. Price further testified that her sister lived at the D'hemecourt address. Based on this testimony, this Court reasoned that while it is possible that defendant stayed from time to time at the South Clark and D'hemecourt addresses, the evidence tended to show that the Edenborn apartment was the defendant's "stash house." *Marshall*, 02–1067, 841 So.2d at 899. Thus, this Court held that the evidence was sufficient to support the elements of possession.[52]

---

[52] *See also State v. Jones*, 09–688 (La. App. 5 Cir. 2/9/10), 33 So.3d 306, finding the

In this case, the defendant's primary contention is that the State failed to establish a connection to the defendant and the contraband seized given the fact that it was not established that the defendant resided at 3232 Kentucky Avenue. We, however, find that the defendant's contention is misplaced, and that the evidence supports a finding that the defendant had dominion and control over the cocaine and weapons seized in the house sufficient to constitute constructive possession.

Similar to the evidence presented in *Marshall, supra*, in this case, at trial, Lieutenant Jewell testified that pursuant to the defendant's arrest, the defendant and his vehicle were searched, at which time $2,205.00 in cash and a cell phone were recovered from defendant's person, and a rental agreement (in the name of his wife, Sharon Robinson), a second cell phone, a set of keys, and a tally sheet were recovered from inside the vehicle. Moreover, when the defendant was asked where he lived, he responded that he lived at 1110 Demarco Street with his mother and wife, Sharon Robinson. However, upon questioning his mother at her home on Demarco Street, she denied that defendant lived with her and told officers that he in fact lived with his wife in "Metairie somewhere." Based on this information, Lieutenant Jewell obtained a search warrant for defendant's home at 3232 Kentucky Avenue where he was known to reside with his wife. Lieutenant Jewell further testified that one of the keys on the key ring seized from defendant opened the front door of the home on Kentucky Avenue. Additionally, upon searching his home on Kentucky Avenue, Lieutenant Jewell testified that two pistols were retrieved from the top of an armoire located in the master bedroom along with $10,000.00 in cash, and a tally sheet matching the one found in the vehicle, in addition to a picture of the defendant in the living room, and paperwork, including a Cox Cable bill, Medicaid, and Social Security Administration documentation, bearing the defendant's name and the Kentucky Avenue

---

evidence was sufficient to establish that the defendant had dominion and control over the apartment to constitute constructive possession and awareness of the drugs and gun seized. In *Jones*, this Court found that although the defendant's name was not on the apartment lease agreement, a search of the apartment yielded the following: male clothing, a Wal–Mart picture envelope with defendant's name, a jacket with cocaine, a credit card and identification card in defendant's name, a cell phone bill matching the cell phone found in the vehicle defendant was driving, pictures of the defendant with kids, and various mail addressed to the defendant. Furthermore, the defendant had been in possession of the key to the apartment, which was on the key ring with the key to the car defendant was driving.

address. Lieutenant Jewell also testified that in the master bedroom where the guns were retrieved, a large amount of men's clothing, shoes, and hats were also found. The officers also recovered contraband in the common areas of the house, including, 255 grams of cocaine split between nine clear plastic bags found in the washing machine in the garage, two and a half grams of crack cocaine on a kitchen shelf, and drug paraphernalia, including plastic bags, razor blades, a scale and a vacuum sealer with vacuum sealer bags in the kitchen.

Taken as a whole, the evidence put on by the State at trial was sufficient to establish a connection to the defendant and the subject house on Kentucky Avenue.[53]  Moreover, the facts as testified to by Lieutenant Jewell, including the evidence seized at the Kentucky residence that directly links the defendant to the home, strongly support the conclusion that defendant had constructive possession over the contraband and that his wife shared with him knowledge of, and access to, the contraband found in the home.[54]

And although the defense presented the testimony of the defendant's girlfriend, Terry Hunter, who testified that the defendant lives with her 90 percent of the time, she admitted that she is unaware of what he does when he is not with her.

Finally, the defendant's mother testified that the defendant does not live with her but is "back and forth" between Terry Hunter's residence on the Westbank and his wife's home on Kentucky Avenue in Kenner.[55]

As in *Marshall, supra*, while it is possible that the defendant may have stayed

---

[53]  Additionally, guilty knowledge of the contraband can be inferred from the testimony of Officer Dixon who presented a disclaimer form to the defendant on which the defendant indicated that the $10,000.00 seized from the Kentucky Avenue home did not belong to him but rather, indicated, that "it was for his brother," who was going to use it to buy a car.

[54]  A subject can have constructive possession if he jointly possesses drugs with a companion and if he willfully and knowingly shares with his companion the right to control the drugs. *Martin*, 788 So.2d at 10–11.

[55]  The defendant's mother testified that her son has been married to Sharon Robinson for 24 years, and that they have two children.

54

at his girlfriend's residence sometime, the evidence established that the Kentucky Avenue home was also where he occasionally stayed based on the direct evidence introduced at trial linking him to the subject residence.

Given the evidence and testimony presented at trial, we find that the evidence is sufficient to support the element of possession. Moreover, we find that the jury could have rationally concluded that the defendant maintained a residence at 3232 Kentucky Avenue with his wife despite the testimony of the defense witnesses, which the jury found to be less credible than that of the State's witnesses.

Thus, based on a review of the record, we find that the State sufficiently proved beyond a reasonable doubt that the defendant was guilty of possession of cocaine in excess of 200 grams, but less than 400 grams, and possession of a firearm by a convicted felon.[56]

The Louisiana Supreme Court subsequently denied his related writ application without assigning additional reasons.

Because a sufficiency-of-the-evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); *Taylor v. Day*, Civ. Action No. 98–3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir.2000).    For the following reasons, the Court finds that Robinson has made no such showing.

Under *Jackson v. Virginia*, 443 U.S. 307 (1979), a federal *habeas* court addressing an insufficiency-of-the-evidence claim must determine, after viewing the evidence in the light

---

[56]  *State v. Robinson*, 87 So.3d at 892-898 (footnotes in original).

most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.   *Jackson*, 443 U.S. at 319; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir.2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir.2008).   Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.   *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n. 16).   The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.   *See McDaniel v. Brown*, 558 U.S. 120, 131, 130 S.Ct. 665, 672 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir.2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (quoting *Jackson*, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.   *United States v. Young*, 107 F. App'x 442, 443 (5th Cir.2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir.1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict.   *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir.2005).

A federal *habeas* court is not authorized to substitute its interpretation of the

evidence or its view of the credibility of witnesses in place of the fact-finder.    *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir.1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.' "    *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir.2001) (quoting *Herrera v. Collins*, 506 U .S. 390, 402 (1993) (emphasis added)).    Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."    *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012); *see also Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012).

   Robinson asserts that the drugs and weapons were not discovered on his person but rather at his estranged wife's residence where she lived with her sister, and the evidence did not suffice to show that he exercised any dominion or control over those items sufficient to establish possession.    He points to the fact that he no longer resided at the home and the lack of credible scientific evidence such as fingerprints linking him to the contraband. Specifically, Robinson argues that the men's clothes discovered in the master bedroom and the documents linking him to the home where the contraband was found (which included a Cox Cable bill, and Medicaid and Social Security documentation bearing his name and that address) were not sufficient proof to establish residency much less constructive possession of the narcotics and weapons.

However, as the Louisiana Fifth Circuit noted, there was ample evidence to support a finding that Robinson exercised dominion and control over the contraband found in the residence.    The court noted that the facts as testified to by Lt. Jewell, including the evidence seized from the subject residence that directly links him to the home, strongly supported the conclusion that he had constructive possession over the contraband and that his wife shared with him knowledge of, and access to, that contraband.    This evidence included the fact that he was still married, though allegedly estranged from his wife of 24 years, and possessed a key on his keychain that opened the front door, the presence of his clothing, a large sum of money and a tally sheet matching the one found in his vehicle discovered in the master bedroom, a picture of Robinson, as well as documentation and bills of significance in his name bearing the subject address.    The weapons were recovered from the master bedroom and large quantities of cocaine and paraphernalia discovered in common areas of the house. The appellate court observed that the jury could have rationally concluded that the defendant maintained a residence with his wife based on the State's evidence, despite the testimony of Robinson's girlfriend and mother that he divided his time and spent up to 90 percent living apart from his wife (testimony which jurors may or may not have found not credible), and thus concluded the State sufficiently proved beyond a reasonable doubt that he was guilty of possession of cocaine in excess of 200 grams, but less than 400 grams, and possession of a firearm by a convicted felon.

When the evidence in this case is viewed in the light most favorable to the

prosecution, it simply cannot be said that the guilty verdict was irrational.   For these reasons, Robinson cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

D.     *Ineffective Assistance of Trial Counsel (Claim Ten)*

Robinson claims that trial counsel was ineffective for failing to conduct adequate pretrial investigation and for failing to issue subpoenas to several witnesses in order to present a competent defense.

Specifically, Robinson argues that counsel failed to conduct adequate pretrial investigation to discover information from witnesses who knew that he did not live with his estranged wife at the Kentucky Avenue address and did not possess the contraband discovered at her residence.   He also argues that further investigation would have confirmed his allegation that the information in the police report was fabricated.   He maintains that defense counsel should have interviewed the following witnesses:    Sharon Robinson; her two sisters, Maria Lewis and Shannon Brown; his mother, Diane Robinson, his girlfriend, Terry Hunter; and his brother, Corey Robinson.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.   *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A

59

petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." *Strickland*, 466 U.S. at 694.    In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state courts rejected Robinson's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002). In fact, the United States Supreme Court has held that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).

To satisfy *Strickland*, a petitioner "'who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'"    *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir.2010) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir.1989)); *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir.1998).    The petitioner must provide factual support demonstrating what exculpatory evidence further investigation would have revealed.

*Moawad*, 143 F.3d at 948; *Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir.2005); *Davis v. Cain*,

No. 07–6389, 2008 WL 5191912, at * 10 (E.D. La. Dec. 11, 2008) (order adopting referenced

Report and Recommendation).    A petitioner cannot show prejudice as to a claim that his

counsel failed to investigate without adducing what the investigation would have shown and

that the outcome would have been different as a result.    *Diaz v. Quarterman*, 239 F. App'x

886, 890 (5th Cir.2007) (citing *Strickland*, 466 U.S. at 696).    For these reasons, brief and

conclusory allegations that the attorney's representation was deficient because of a failure

to investigate and develop useful evidence will not suffice.    *See Anderson v. Collins*, 18 F.3d

1208, 1221 (5th Cir.1994).

    In the instant case, defense counsel did present the testimony of witnesses Terry

Hunter and Diane Robinson at trial to establish that Robinson did not reside with his

estranged wife at the residence where the contraband was found.    Robinson cannot show

that interviews with his estranged wife or her sister, Lewis, *who were both charged as co-*

*defendants in the case*, would have developed any information that could have been used at

trial and resulted in a different outcome.    Apart from the fact that these two co-defendants

did not plead guilty until after Robinson's trial and conviction, and certainly may have

invoked their Fifth Amendment privilege not to testify, there is absolutely nothing to indicate

that either would have testified favorably at trial given their antagonistic posture in the

matter, as reflected in the comments of their attorneys and the decision ultimately to sever.[57]

---

[57] State Rec., Vol. 2 of 7, Hearing Transcript (March 4, 2010), p. 30.

As Robinson notes, defense counsel was aware of all potentially exculpatory evidence from these individuals that was revealed during pretrial discussions, which the State disclosed prior to trial pursuant to its obligation to do so.[58]   Under the circumstances, defense counsel made an informed, objectively reasonable strategic decision not to interview his co-defendants as defense witnesses.[59]

Nor did the failure to interview these witnesses detract from the defense.   Counsel was still able to advance the position that the contraband did not belong to Robinson and that he did not reside at the home where it was discovered.   He effectively cross-examined the State's witnesses to highlight limitations in the evidence linking Robinson to the drugs.[60] The defense also offered testimony and evidence at trial to show that Robinson did not maintain a residence with his estranged wife at the time of the incident.   Diane Robinson and Terry Hunter testified as defense witnesses, and Robinson fails to show what additional interviews with these witnesses could possibly have revealed.   Furthermore, any additional subjective testimony from family members on the issue was not likely to alter the

---

[58]   State Rec., Vol. 2 of 7, Letter from Assistant District Attorney, Scott Schlegel dated March 10, 2010.

[59]   State Rec., Vol. 2 of 7, Trial Transcript (March 11, 2010), p. 52.

[60]   For instance, the transcript reflects defense counsel's strategy in not relying on Maria Lewis or the information disclosed by the State that she advised them the washer and dryer where drugs were located belonged to her, and instead conducting effective cross-examination of Lt. Jewell where he admitted they had no evidence whatsoever that linked those appliances to Mr. Robinson.   *See* State Rec., Vol. 1 of 7, Trial Transcript, pp. 97-101.

conclusion reached based upon the substantial objective evidence produced by the State that established his connection to that residence.

Though Robinson suggests counsel should have interviewed his brother, there is nothing to suggest his testimony would have been beneficial.    Contrary to his allegation, it was not necessary for defense counsel to pursue an interview with his brother to "corroborate" Robinson's statement that the $10,000 in cash found in the master bedroom belonged to his brother.    After the State questioned Officer Gene Dixon on direct examination about the disclaimer of the money, defense counsel effectively cross-examined him to elicit details surrounding the money and Robinson's disclaimer of those funds.[61]

Robinson also faults counsel for failing to discover DNA evidence collected from weapons for use at trial.    He points to one swab that apparently was taken, but was not disclosed to the defense.    As revealed at trial, the State itself had no knowledge of the swab or even whether or not it was ever tested.[62]    Therefore defense counsel cannot be faulted for any failure to discover the evidence earlier.    Nor can any prejudice be shown in any event because there is nothing in the record to suggest that DNA results were even obtained, much less that the evidence would have been helpful to the defense.    Thus, for the reasons expressed, Robinson has brought forth no evidence to establish a reasonable probability that

---

[61]  State Rec., Vol. 2 of 7, Trial Transcript, pp. 165-67.

[62]  State Rec., Vol. 1, 2 of 7, Trial Transcript (March 10, 2010), pp. 152-157. Robinson makes no claim of a *Brady* violation in these proceedings and that claim was rejected by the state courts on post-conviction review.

further investigation would have revealed information which, if it had been discovered and presented at trial, would have resulted in a different outcome.

Furthermore, his speculative claims that defense counsel should have conducted additional investigation prior to the pretrial suppression hearing fall short.    He contends that if defense counsel had read and reviewed the police report and interviewed witnesses, he could have established that the police report was fabricated.    Contrary to his assertion, the record reflects that counsel was familiar with the specific details contained in that report and referenced those details on the morning of trial before the trial court revisited the suppression issue.[63]

In particular, Robinson challenges counsel's failure to interview and call Sharon Robinson, Maria Lewis and Shannon Brown as defense witnesses at the suppression hearing (or trial) in order to prove he did not possess the contraband and in order to impeach Lt. Jewell's testimony about his "fabricated" police report.    He references affidavits from these three individuals submitted with his 2013 counseled state-court application for post-conviction relief in support of his claim.[64]

In addressing claims for failure to call witnesses, the United States Fifth Circuit

---

[63]   State Rec., Vol. 1 of 7, Trial Transcript (March 10, 2010), pp. 7-9.

[64]   Though he also mentions an affidavit containing information from Diane Robinson, her affidavit sets forth allegations with regard to an alleged unauthorized entry into her own home, which would not have led to suppression of evidence that resulted from the independent search of Sharon Robinson's residence.

Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir.2010) (citations, quotation marks, and brackets omitted); *see also Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir.2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

As previously discussed, the availability of at least two of the witnesses is highly questionable, as they were his co-defendants who shared culpability for possession of contraband and had not yet been convicted at the time of Robinson's trial.   There is no indication from the record that they were willing to testify (presumably after waiving their Fifth Amendment rights not to do so) or that they had previously made any such statements about Robinson's culpability.   For the same reasons he failed to demonstrate ineffective assistance in the trial context, petitioner fails to satisfy his burden of proof with respect to his failure to pursue and use these witnesses at the suppression hearing.   *See Day*, 566 F.3d

at 538.    Their dubious willingness to testify and availability aside, defense counsel certainly had reason to believe that any helpful testimony they presented with regard to the police action and search would be seen as inherently suspect and unbelievable given their interest in the matter, not to mention their familial relationship with petitioner. Furthermore, their testimony arguably had little, if any, impact on the validity of the search warrant because the initial findings resulting from the officers' entry and protective sweep did not provide the sole probable cause for the search warrant.    Defense counsel's strategy to challenge directly the validity of the search warrant based on Robinson's alleged statement to police regarding his address, rather than contest the constitutionality of the officers' initial entry was objectively reasonable under the circumstances.    Although Robinson emphasizes that Brown, who was not a co-defendant, witnessed officers seizing evidence before a search warrant had been obtained, Brown plainly attests only that she never saw a warrant because officers refused to show her one despite her requests.    She arrived to assume custody of Lewis's minor child upon her arrest and began questioning officers.    However, the mere fact that she was not shown a search warrant does not establish that officers in fact had no valid warrant.    The decision not to pursue these individuals as witnesses for the suppression hearing was an "informed strategic choice" falling well within the "wide range of professionally competent assistance" described by the Supreme Court.    *See Strickland*, 466 U.S. at 690.

Furthermore, any claim that the evidence against him would have been suppressed if

defense counsel had called these witnesses to testify at the suppression hearing is mere speculation.    The testimony of these witnesses would have been neither compelling nor credible, and therefore it is highly unlikely that the trial court would have believed their version of events over the lieutenant's version.    Thus, Robinson has not shown a reasonable probability of a different outcome had Sharon Robinson, Maria Lewis and/or Shannon Brown been called as witnesses.    Consequently, Robinson fails to show prejudice.

For the foregoing reasons, Robinson has not demonstrated that the state court's decision rejecting this ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that Robinson's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United*

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[65]

New Orleans, Louisiana, this <u>24th</u> day of <u>October</u> 2016

<u>MICHAEL B. NORTH</u>
**UNITED STATES MAGISTRATE JUDGE**

---

[65] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.